UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:

Athens/Alpha Gas Corporation,
a Texas Corporation,                                    Bankruptcy No. 03-30008
                                                        Chapter 11
            Debtor.
_____/

Athens/Alpha Gas Corporation,
a Texas Corporation,

            Plaintiff,

      vs.                                               Adversary No. 05-7047

Robert Hallmark and
William R. Austin,

            Defendants.
_____/

**MEMORANDUM AND ORDER**

This case is before the court on motion for summary judgment filed on January 24, 2006 by Defendants Robert Hallmark and William R. Austin. Plaintiff-Debtor Athens/Alpha Gas Corporation ("Debtor") filed an objection to the motion on February 27, 2006.

On November 2, 2005, Debtor brought this adversary proceeding against Defendants alleging statements made by counsel for Robert M. Hallmark & Associates, Inc., Frank Celeste, William R. Austin, Phoenix Energy, Inc., Bobby Lankford and Erskine Williams ("Interest Holders") at a hearing held on December 14, 2004, were fraudulent. Debtor claims that Defendants engaged in a fraudulent scheme to produce false testimony in achieving confirmation of their plan of

reorganization. Pursuant to 11 U.S.C. § 1144, Debtor seeks revocation of the court's Order confirming the Interest Holders' plan of reorganization entered May 5, 2005.

By the instant motion for summary judgment, Defendants seek dismissal of this adversary proceeding. Defendants argue summary judgment is appropriate because the adversary proceeding is barred by res judicata and/or collateral estoppel, Debtor has failed to state a cause of action under 11 U.S.C. § 1144, Debtor waived its fraud claims by failing to raise them earlier in these proceedings, Debtor failed to state a claim against Defendant Robert Hallmark, and Debtor has failed to join all indispensable parties in the action.

## I.  Factual Background

Debtor owns approximately 50% of the working interest in a well in western North Dakota, and Interest Holders own 45.16% of the working interest in the well. Defendant Robert Hallmark, individually, does not have an ownership interest in the well.

Debtor operated the well for several years and filed a petition for relief under Chapter 11 of the Bankruptcy Code on October 28, 2002. After the filing of the bankruptcy petition, the well produced revenue significantly in excess of expenses. Rather than remit 45.16% of the net revenue from the well to Interest Holders, Debtor used the money to pay operating expenses, salary to Debtor's president, Frank Woodside, and debts unrelated to the well.

In December 2002, Debtor proposed a plan of reorganization. Interest Holders opposed the plan and sought allowance of an administrative expense claim for their share of the well's postpetition revenues. Debtor argued an operating agreement entitled it to assess a 400% penalty against the Interest Holders' expense claim because they did not pay their proportion of expenses for a reworking of the well in 2000 and 2001. This Court ruled Interest Holders were not entitled

to an administrative expense claim, but that the operating agreement was not binding and the Debtor could not impose a penalty against Interest Holders. Interest Holders appealed the administrative expense issue and the Bankruptcy Appellate Panel for the Eighth Circuit (BAP) ruled that the Interest Holders were entitled to an administrative expense claim totaling $333,089.65. Debtor did not appeal the penalty issue.

Interest Holders filed a competing plan of reorganization on November 15, 2004, and an amended plan on February 25, 2005. A hearing on confirmation of the Interest Holders amended Chapter 11 plan was held on March 22, 2005, and on May 5, 2005, the Court entered an order confirming the plan. Debtor filed a motion for reconsideration, which this court denied, and then appealed the confirmation of Interest Holders' amended plan. Debtor's appeal was dismissed by the BAP.

In accordance with Interest Holders' amended plan, Missouri Breaks, LLC, was formed and acquired Debtor's assets. Missouri Breaks brought an adversary proceeding against Frank Woodside and Margaret Woodside asserting the Woodsides received hundreds of thousands of dollars in unauthorized and illegal transfers from Debtor postpetition. On December 16, 2005, the Woodsides entered into a settlement agreement with Missouri Breaks stipulating to entry of a judgment in Missouri Breaks's favor in the amount of $1,000,000.

II. Conclusions of Law

Rule 56 of the Federal Rules of Civil Procedure applies in adversary proceedings. Fed. R. Bankr. P. 7056. Summary judgment is appropriate if, viewing all reasonable inferences favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Superpumper, Inc. v. Nerland Oil, Inc. (In re Nerland Oil,

3

Inc.), 303 F.3d 911, 916 (8th Cir. 2002) ; Nelson v. Nelson, (In re Nelson), 255 B.R. 314, 316 (Bankr. D.N.D. 2000); see Fed. R. Civ. P. 56. Procedurally, the initial burden is on the moving party to establish the lack of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Dennis v. Novotny (In re Novotny), 224 B.R. 917, 921 (Bankr. D.N.D. 1998). Once the moving party has made its showing, the burden shifts to the nonmoving party to demonstrate the existence of a genuine dispute. Fed. R. Civ. Pro. 56(e).

A court must perform a two-part analysis to determine whether there is a genuine issue as to any material fact. The first inquiry is whether a contested fact is material. Substantive law determines whether a fact is material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the suit under governing law. Id. The existence of such a fact will preclude an entry of summary judgment. Id. Factual disputes that are irrelevant to the suit's outcome are to be disregarded. Id. The second determination is whether the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. If the fact may be reasonably resolved in favor of either party, then there is a genuine factual issue that may only be resolved by the trier of facts and summary judgment will be denied. Id. at 250. If, however, the evidence is so one-sided that one party must prevail as a matter of law, then summary judgment will be granted. Id. at 252.

Section 1144 of the Bankruptcy Code governs revocation of an order confirming a plan. It provides that "[o]n request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud."

4

Section 1144 was designed to limit challenges to the viability of the reorganized entity emerging from Chapter 11, to fix the liabilities of the reorganized debtor, and to provide certainty and finality to the confirmation process. Haskell v. Goldman, Sachs & Co. (In re Genesis Health Ventures, Inc.), 324 B.R. 510, 517 (Bankr. D. Del. 2005). The effect of revocation under section 1144 would be to void the order of confirmation, to remove Interest Holders' authority to operate under the terms of the confirmed plan; and to question the legal consequences of Interest Holders' operations under the confirmed plan. See In re Ogden Modulars, Inc., 207 B.R. 198, 200 (Bankr. E.D. Mo. 1997).

Relief under section 1144 is discretionary; the court may, but need not, revoke the confirmation order if it finds fraud. Salsberg v. Trico Marine Services, Inc., (In re Trico Marine Services, Inc.), ____ B.R. ____, 2006 WL 327901 (Bankr. S.D.N.Y. 2006). The court must consider all of the circumstances and determine whether revocation of the order of confirmation can or would lead to an outcome that is more equitable than leaving the order intact. Id. The court must also consider the interests of all parties as well as the need to preserve the integrity of the bankruptcy system. Ogden v. Ogden Modulars, Inc. (In re Ogden Modulars, Inc.), 180 B.R. 544, 547 (Bankr. E.D. Mo. 1995). The Code thus affords the court considerable discretion to revoke the order of confirmation or take such action as is equitable and appropriate.

Debtor alleges Defendants' fraudulent scheme involved three steps: 1) avoid paying contractual penalties by discrediting the operating agreement, 2) discredit Frank Woodside and make it appear as though he was embezzling the proceeds of Debtor, and 3) fail to inform creditors voting on their plan that they had not paid their share of operating expenses for the reworking of the well. The specific statements Debtor alleges were false were that: income attributable to Interest Holders was at least $424,000; Debtor lost 50% of the revenue stream based on the ownership of Defendants;

5

Frank Woodside paid himself $386,000 from Debtor without court authorization; Frank Woodside incurred tens of thousands of dollars of unauthorized credit card charges; Debtor owes Interest Holders $585,000 secured by a lien.

In considering all the circumstances of this case, the court notes from the outset that the Interest Holders' amended plan has been substantially consummated. Under 11 U.S.C. § 1101(2), "substantial confirmation" means the (A) transfer of all or substantially all of the property proposed by the plan to be transferred; (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and (C) commencement of distribution under the plan. The substantial consummation of the Interest Holders' amended plan is a circumstance that weighs against revocation.

Another circumstance weighing against revocation is that three months elapsed between the hearing on December 14, 2004, at which the allegedly fraudulent statements were made and the hearing on confirmation of the Interest Holders' plan on March 22, 2005, yet the Debtor failed to raise the issue at the confirmation hearing on the Interest Holders' plan.

Next, section 1144 allows a court to revoke the order of confirmation "if and only if such order was procured by fraud." For the order of confirmation to be revocable, therefore, fraud must be directed at the court. Tenn-Fla Partners v. First Union Nat'l Bank of Florida, 229 B.R. 720, 730 (W.D. Tenn. 1999). Because Congress did not define what constitutes "procured by fraud" for purposes of revoking confirmation, the question is left to judicial construction. In re Ogden Modulars, Inc., 180 B.R. at 547. "Fraud on the court" has been defined as a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. Harbold v. Commissioner, 51 F.3d 618,

6

622 (6th Cir. 1995). In the context of revoking an order of confirmation under section 1144, this can be restated as requiring:

1) a representation by the plan proponent regarding compliance with section 1129;
2) which was materially false;
3) that was either known by the plan proponent to be false, or was made without belief in its truth, or was made with reckless disregard for the truth;
4) that was made to induce the court to rely upon it;
5) that the court did rely upon; and
6) that as a consequence of such reliance, the court entered the confirmation order.

Tenn-Fla Partners, 229 B.R. at 730. The burden is on the movant in the first instance to plead that the alleged fraud substantially affected the confirmation process and—more to the point—to specify how. In re V & M Management, Inc., 215 B.R. 895, 903 (Bankr. D. Mass. 1997).

The allegedly fraudulent statements made at the December 14, 2004 hearing did not pertain to confirmation of the Interest Holders' plan because confirmation of the Interest Holders' plan was not a matter before the court. The matters before the court on December 14, 2004, were confirmation of the Debtor's second modified plan, approval of Defendants' amended disclosure statement, and a motion to dismiss filed by the United States Trustee. The allegedly fraudulent statements were made by counsel for creditors objecting to the Debtor's plan and seeking approval of their amended disclosure statement. In other words, the allegedly fraudulent representations were not made by the plan proponent regarding compliance with section 1129, as required to maintain an action under section 1144.

Lastly, the court did not rely on the statements in confirming the Interest Holders' plan, but rather relied on evidence produced at the hearing on Interest Holders' plan on March 22, 2005. The

7

court concludes there is no genuine issue of material fact in this case, Debtors' claim under section 1144 fails, and Defendants are entitled to judgment as a matter of law.

Based on the foregoing, the Defendants' motion for summary judgment is hereby GRANTED.  **SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this March 9, 2006.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**